IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION



| | | |
|---|---|---|
| ARMANDO SIMON,<br>　　　　PETITIONER | §<br>§<br>§ | |
| V. | § | NO. CA-C-00-90 |
| | §<br>§ | |
| GARY L. JOHNSON,<br>　　　　RESPONDENT | §<br>§ | |

PETITIONER'S REBUTTAL OF RESPONDENT'S
MOTION FOR SUMMARY JUDGEMENT

TO THE HONORABLE JUDGE OF SAID COURT :

   NOW COMES Armando Simon, Petitioner, acting prose to refute Respondent's basis for his Motion For Summary Judgement, which was mailed on June 15 and received by Petitioner on June 19, 2000 AD.

I
EXHAUSTION OF STATE REMEDIES

   Petitioner has sufficiently exhausted his state remedies by 28 U.S.C. § 2254 (B)(1) with regard to the issues discussed below.

II
PETITIONER'S ORIGINAL ALLEGATIONS

   Respondent's original allegations were cited in Respondent's motion. The cornerstone of the allegations was ommitted, namely, the issue of governmental censorship in having two parole conditions that have a blanket prohibition on the use and/ or possession of any type of computer or fax equipment, and of being subscribed to the internet. Petitioner was originally violated for supposedly using a computer with which to check stock prices. This is a First Amendment issue. Guajardo v. Estelle 568 F. Supp. 1354; San

1

Antonio-Express News v. Roman  861 SW 2d 265; Matthews v. Wozencraft  15, F. 3D 432; City Of Erie v. Pap's A.M.  120 S. CT. 1382.

It must be kept in mind that one of the uses of computers is to send and receive E-mail.

### III
### BASIS FOR RESPONDENT'S MOTION FOR SUMMARY JUDGEMENT

**A) AEDPA**

Respondent utilizes the AEDPA for the purpose of advocating denying relief. However, a review of the Writ Of Habeas Corpus will disclose that it more than meets the AEDPA criteria in that Petitioner's parole revocation violated Federal law in both the fields of case law and constitutional rights. Terry Williams v. Taylor , 2000 WL 385369 (U.S. 2000 ). The First, Fifth and the Due Process Clause of the 14th Amendment come into play, as do U.S. v. Smith 618 F. 2D 280 ( C.A. 5 Texas 1980 ); Gardner v. Broderick, 392 U.S. 279 88 SCT. 1916 ( 1984 ); Farrish v. Mississippi Parole Board  836 F. 2d 969 (1998); Cook v. Texas Department Of Criminal Justice 37 F. 3D 166 ( 5th Cir. 1994 ); Parton v. Armontrout  983 F. 2d 881 ( 8th Cir. 1993 ).

The Writ also reveals that the conclusion was based on "An Unreasonable Determination of Fact," the patently obvious instance being in Petitioner's supposed guilt of subscribing to the internet without any evidence whatsoever being presented at the revocation hearing to that effect. As to the other cause for revocation, using/ owning any computer equipment, the preponderance of the evidence favored acquittal

The motion should be dismissed.

**B) A "Mixed Petition"**

It is significant that nowhere does Respondent dispute the facts of the matter in question but opts instead for engaging in procedural oneupsmanship. Specifically, the claim is put forth that the Habeas Writ is a "Mixed Petition" in that it contains four claims not previously presented to the Texas Court Of Criminal Appeals, to wit, 1) "The conditions of his parole banning him from using a computer is invalid" 2) "A letter from his son was not included in the hearing report" 3) "He was not permitted to present evidence in his defence" 4) "And that his assertion that a witness at his parole revocation hearing was not credible was not mentioned in his report." page 6 in Respondent's motion.

Perhaps these four were picked at random by Respondent in as much as this is a willfull misrepresentation of the facts. As can be seen in Writ No. 26,427 these claims were indeed put forth in the original application for relief. See evidence A, pages 4-5. For the convenience of the Court, the undersigned has marked to the side where these can be found.

At any rate, a recent Supreme Court ruling, in Slack v. McDaniel  120 S. CT. 1595 (2000) undermines Respondent's overall Catch-22 argument regarding "Mixed Petition."

2

Lastly, should tha Court nevertheless declare that the aforesaid four issues were not brought up at the state level, Petitioner exercises his option to withdrawn those issues. Rose v. Lundy 102 S. CT. 1198. " A total exhaustion rule will not impair that interest (speedy Federal relief ) since he can always amend the petition to delete the unexhausted claims, rather than returning to state court to exhaust all of his claims." at 1204.

The motion should be dismissed.

### C) Morrissey v. Brewer

Respondent states that even if the Habeas application is not a "Mixed Petition," the six bare minimum requirements of Morrissey v. Brewer 408 U.S. 471, 92 S. CT. 2593 (1972) sufficed to provide sufficient due process.

In regards to the third requirement, that of parolee having the opportunity at the revocation hearing to present witnesses and documentary evidence, the record substantiates Petitioner's allegation that this was thwarted. "A parolee, like a prisoner, is a person entitled to Constitutional Protection, including procedural due process." at 2608. As to the fifth requirement of there being a neutral and detached hearing officer, it did not become evident until after the fact that the officer was biased, as evidenced by his statement in the hearing report that the parolee's personality was sufficient grounds for incarceration, and, in Petitioner being found guilty of having violated the injunction against subscribing to the internet without any evidence having been presented to that effect. As for the sixth requirement, Respondent has misunderstood : it is true that Morrissey , Supra , simply requires a written statement detailing the reasons for revocation. There is a distinction between the written statement and the hearing report. The former has been attached to the latter as a cover letter in the copies found in Petitioner's Writ and Respondent's Motion. It is the Hearing Report itself, which is used by The Parole Board to make a decision, whether or not to revoke, that the Petitioner has attacked as being both misinforming and malicious.

Additionally, Morrissey is not simply a formality that parole officers must only give lip service to and under it commit all manners of abuse of authority. "The rule of law is important in the stability of society. Arbitrary actions in the revocation of paroles can only impede and impair the rehabilitating aspects of modern penology." at 2609. Underlying Morrissey is the concept of legitimate due process and not an empty formality. "We see, therefore that the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others." at 2601.

Assuming, however, Respondent's original assertions regarding Morrissey to be correct, one finger does not an amputated hand make. Petitioner reiterates that nowhere has Respondent challenged the facts of the case nor refuted all of the grounds put forth in the Habeas petition. We return again to the issue of censorship. Nor is Morrissey the only Federal cornerstone of parole revocations. Conditions of parole must be neither unreasonable nor arbitrary nor adverse to Constitutional Rights. U.S. v. Smith 618 F 2d 280 ; U.S. v. Mills 959 F 2d 516.

Respondent's motion should be denied.

3

# IV
# POLYGRAPH

Respondent includes in the Motion two polygraphs that Petitioner was forced to submit to under protest due to his inability to pass any polygraph containing emotional-laden questions. Extensive case law has uniformly dictated that polygraph should not be included for any legal purpose whatsoever. Any reference to a polygraph is improper. <u>Russell v. State</u> 798 SW 2d 632; <u>Sparks v. State</u> 820 SW 2d 678.

# V
# FAILURE TO RESPOND

An Order for Service of Process was entered on this case on May 2, 2000 AD. The stipulations found therein were quite clear and specific. In particular, stipulation #4 was succinctly clear : "4. Respondent shall file his answer within ( 30 ) days of his receipt of the petition." at page 1 of Order.

To date, Petitioner has not received the required response, nor has such a response actually been filed.

Stipulation #7 in said order deals specifically with motions as a separate construct apart from the response. Nowhere is any provision made in said order that a motion will serve in lieu of a response. Consequently, any motions made by Respondent either prior to, or subsequent to, the 30-day deadline becomes moot by default. This applies to the present motion which should be dismissed. Furthermore, since Respondent has defied the Court in its order to answer within the required deadline, Petitioner's Writ Of Habeas Corpus should be affirmed <u>in toto</u> .

# VI
# EVIDENTIARY HEARING

Petitioner respectfully reaffirms his request for an evidentary hearing.

# VII
# CERTIFICATE OF APPEALABILTY

Should the Court deny Petitioner's Habeas application, Petitioner applies for certificate of appealability on the basis of violation by the State of First Amendment Protection from censorship by the government. Slack v. McDaniel, 120 S. CT. 1595; 28 U.S.C.A. § 2253.

## VIII
## DOCUMENT'S APPERANCE

Because Petitioner seeks a speedy resolution to the case, because there is a deadline to refute Respondent's Motion for Summary Judgement, and because Petitioner's printer is temporarily broken, this rebuttal is handwitten, though legibly. For the Court's convenience a printed copy of this refutation will subsequently be filed with a corresponding copy going to Respondent.

## IX
## REQUEST TO EXPEDITE RESOLUTION

The matter before the Court is straightforward. Petitioner has been wrongfully incarcerated for one year and for various reasons involving finances, his family's health and his personal safety, a speedy resolution is desired. Petitioner respectfully begs the Court for a speedy resolution to his habeas petition. To that effect, Petitioner respectfully begs the Court to query Respondent as to whether any further motions, etc. are forthcoming. So that, if not, the matter can be resolved at the Court's earliest convenience.

WHEREFORE, PREMISES CONSIDERED, Petitioner respectfully requests that Respondent's Motion be dismissed.

Respectfully submitted,

Armando Simon
TDC #522486
Garza East Unit
HC 02 BOX 985
Beeville, Tx 78102

5

## CERTIFICATE OF SERVICE

    I, Armando Simon, Petitioner, do hereby certify that a true and correct copy of the above and foregoing Petitioner's Rebuttal of Respondent's Motion for Summary Judgement has been served by placing same in the U.S. mail, postage prepaid, on this 28th of June, 2000, addressed to :

        Gary L. Johnson, Director
        P.O. BOX 99
        Huntsville, Tx 77342

        *[signature]*
        Armando Simon
        TDC #522486
        Garza East Unit
        HC 02 BOX 985
        Beeville, Tx 78102

EVIDENCE A

CAUSE # 01-85-0512-CR
( TRIAL COURT CASE # 15,894 )

STATE OF TEXAS
    V.
ARMANDO SIMON

IN THE DISTRICT COURT
23rd/239th JUDICIAL DISTRICT
BRAZORIA COUNTY, TEXAS

## APPLICATION FOR WRIT OF HABEAS CORPUS
## ILLEGAL RESTRAINT

To The Honorable Judge Of Said Court :

    Comes now, Armando Simon, Defendant in the above styled and numbered cause and upon his oath states that he is being unlawfully restrained of his liberty by The Texas Department Of Criminal Justice, at The Garza West Unit, under Wayne Scott.

**I**

    Defendant has been restrained of his liberty by virtue of a warrant issued by The Board Of Pardons and Paroles ("Blue Warrant") since the day of 1 July, 1999 for allegedly having broken special parole conditions against owning a computer when he bought a computer for his non custodial child as a gift, and, against being subscribed to the internet when his wife subscribed Defendant's son to it.

**II**

    Defendant will show that such restraint on his liberty is illegal for the following reasons :
1) Defendant does not have, and has not had, any unajudicated charges pending against him.
2) Procedural errors were made during the revocation hearing ( detailed below ).
3) The hearing report, which is used for making a decision by The Parole Board, contained flaws ( detailed below ).
4) Case law was extensively violated ( detailed below ).
5) Due process was circumvented, contrary to The Bill Of Rights.
6) Even if Defendant had indeed operated/owned a computer and/or been subscribed to the internet, elemental right of free press/free speech are guaranteed by The Bill Of Rights.
7) Defendant has learned that : (a) Revocation of his parole was pre-ordained by several individuals working in The Parole Agency. (b) That a parole office supervisor was ordered to violate Defendant for whatever reason could be concocted; this occured immediately after receiving the results of a mandatory "Therapeutic" Polygraph. (c) That in the event that the present revocation decision is negated by The Courts, an automatic decision to revoke will follow a re-hearing, and/or, brand



    new (bogus) allegations of violation(s) of parole conditions will be levelled against the Defendant. It should be pointed out in this regard that during Defendant's incarceration in The Bexar County Jail, hundreds of arrested parolees, most of them career criminals with extensive criminal records, and most of them not with technical violations but with new crimes, were either reinstated or sent to a Wackenhutt facility for 90 days. Yet, Defendant is only charged with a technical violation and remains a first time offender, after all these years, yet his parole was revoked.

8) There is no credible evidence whatsoever to substantiate the allegations against the Defendant (detailed below).

9) The members of The Parole Bureaucracy have adopted an IRS mentality that has led them for years to violate both statutory law and case law. This has been done countless time and it is well documented, because of the blatancy with which it has been done. They have been done so impunity over the years, done so arrogantly, because they have never been held accountable in a punitive manner, either individually or institutionally, and, because there is no independent agency in existence that serves as watchdog over them, akin to an Internal Affairs Division. Hence they unconcernedly and doggedly violate the most elementary rules of procedure, case law and statutory law over and over and over over the same legal point that may occasionally be overruled by The Court whenever said legal point is brought to its attention. Of course, the irony of sending a law-abiding parolee to prison for an alleged rule violation while contradicting/violating the law in the process is too much for words.

### III

    Defendant was required to take a yearly polygraph under the guise of "Therapy", said requirement was mandated by The Parole Bureaucracy and thrusted upon mental health professionals as a conditions for their receiving a lucrative caseload. The polygraph then becomes part of a parolee's parole (legal) record and can be used punitatively. If a parolee refuses to take a polygraph, his parole is revoked; this catch-22 was admitted to by Defendant's parole officer in the hearing. "Therapy", incidentally, by definition, benefits the recipient; incarceration, by definition, is harmful to the recipient.

    During the revocation hearing a polygraph taken by the Defendant three months prior and containing a question on computer usage was included and often consulted and discussed. The polygraph examiner was not present at the hearing to discuss the test. The use of the polygraph in the hearing was objected to. Additionally a previous polygraph of 1½ years was also included in the proceedings, reviewed and consulted-eventhough totally irrelevant to the allegations.

    Case law unimformly states that a polygraph may not be used in any legal matter whatsoever (nor its existence be alluded to) by either state or Defendant : Russell V. State 798 S.W. 2d 632; Burden V. State, 634 S.W. 2d 349; Sparks V. State, 820 SW 2d 924; Jones V. State, 680 SW 2d 499; Castillo V. State, 739 SW 2d 280; Giesen V. State, 688 SW 2d 176; U.S. V. Frogge, 476 F. 2d 969;

Tennard V. State, 802 SW 2d 678; Shiflet V. State, 732 SW 2d 622; Lewis V. State, 500 SW 2d 167; Crawford V. State, 617 SW 2d 925; Fernandez V. State, 564 S.W. 2d 711; Robinson V. State, 550 SW 2d 54; Reed V. State, 522 SW 2d 466; King V. State, 511 SW 2d 32; Humparey V. State, 479 SW 2d 51; Lee V. State, 455 SW 2d 316; Hart V. State, 477 SW 2d 944; Watkins V. State, 438 SW 2d 819.

## IV

On "there is no credible evidence whatsoever to substantiate the allegations against the Defendant."
   W.M. Anderson, an adverse witness and Defendant's parole officer, testified that there was no computer at his domicile, that she had never seen him operate a computer nor that he had told her that he had used one. She admitted that it was <u>not</u> contrary to the conditions of parole to pay for a computer for his son as a gift while son was physically present at the time of purchase.
   Q : Did Mr. Simon ever mention to you at anytime his using a
        computer ?
   A : No, he did not.
Later :
   Q : Is buying a computer as a gift for my son a violation of
        any conditions of parole ?
   A : No.

   Mrs. Elley, an adverse witness, stated that Defendant had never stated that he used/owned a computer.
   Mr. Keedy, an adverse witness, stated that Defendant had never stated that he used/owned a computer.
   Alexander Simon, though he could not testify in person, submitted a letter stating, in unflattering terms, that Defendant was technologically challenged, that there was no computer in Defendant's residence, that Defendant had never used son's computer, that Defendant had bought him a computer in order for him to attend Florida classes through the web while he visited and lived at his grandmother's home for the summer where he had assembled the computer by himself. The letter was admitted into evidence.
   Telly Simon stated that there was no computer at Defendant's residence, that she had never seen him utilize a computer, and in fact can not use one as he is hopelessly computer illiterate, that she has paid for an internet subscription for her stepson, and that she has periodically obtained stock prices for the Defendant at the latter's request while he was driving in his car to work.
   Anthony Ramirez, an adverse witness, is a parole office supervisor. His report constituted the sole evidence against the Defendant. Ramirez reported at the hearing that in a meeting with the Defendant tha latter had stated that he used a computer with which to ascertain stock prices and buy/sell stocks. He also affirmed having received a letter from Keedy categorically stating that Defendant had told Keedy that Defendant owned/operated a computer. The letter was introduced into evidence; the letter did not confirm his claim. Hearsay alone will not suffice to revoke parole , McBride V. Johnson 118 F. 3D 432 5th Circ. (1997)

Defendant testified that he did not own nor operate a computer nor was subscribed to the internet, that the computer was the property of his son, that it was used by his son and his wife, that they obtained prices of stocks for the Defendant at the latter's request, that Ramirez misunderstood or miscontrued what Defendant has said, possibly due to whisful thinking.

No documents were pressented that would demonstrate Defendant's ownership of a computer.

No documents were presented that would demonstrate Defendant's membership in an internet service.

No one testified having seen a computer at Defendant's domicile.

No one testified having seen Defendant operating a computer.

No one testified having seen Defendant subscribing to an internet service.

This is a " Preponderance Of Credible Evidence " for which a parolee can be found guilty, and possibly revoked ? Instead, it underlines the assertion that the results of a hearing can be adversely predetermined regardless of the dearth of evidence. Defendant has indeed been revoked for a computer he does not own, does not know how to operate, is located in a place that is not his residence and to which someone else has subscribed to the internet service. At the same time, hundreds of inmates in the same facility who had received a blue warrant because of new crimes committed were reinstated or sent to Wackenhutt.

**V**

On "The hearing report, which is used for making a decision by The Parole Board, contained flaws":

No mention was made of the admitted evidence in the letter by Alexander Simon.

Anderson did _not_ state that Defendant had reported to her that he was using a computer; the report states the opposite (page 4 ).

Defendant's insistence that Ramirez's mistaken report of Keedy's letter as proof to the latter's unreliability as as accurate, credible witness is absent from the report.

Anderson's statement on adjustment: she initially stated that Defendant's adjustment was poor because of this allegation, but if that was removed, it had been satisfactory. The report (page 7) states adjustment to be marginal.

Anderson testified that it is _not_ a violation of parolee to buy a computer for his son. This highly important point was not included in the report.

Defendant's testimony is misrepresented : "He plans on selling _his_ computer once he is released." (page 6) A similar instance takes place with Keedy's testimony (page 5).

Throughout the report, Bruce Benke, the hearing officer, and Daniel Abbey, the jail supervising officer, demonstrated a consistent hostility, often initimating that the Defendant's personality is sufficient to revoke him (pages 3, 6).

Once the wheat is separated from the chaff, the report is revealed as a thick, scathing manuscript full of innvendoes, irrelevancies, and omissions, as just so much smoke, so much ver-

biage, to conceal the fact that the preponderance of the evidence is against the allegations. There is no evidence-no cre dible evidence -just jeering.

## VI

On "Procedural errors were made during the revocation hear ing" :

Granted that a parolee's legal rights are truncated in com parison to a Defendant standing trial for the very first time. Nonetheless, not all constitutional rights disappear as a result of parole, a fact which most annoy parole bureaucrats, Garrett V. State, 791 SW 2d 137 (1990); Gardner V. Broderick, 392 US 279 88 SCT. 1916 (1984); Beck V. Purkett 11F 3D 803.
Proper procedure is likewise mandated by case law : Gagnon V. Scarpelli, 411 US 778, 93 S.CT. 1975 36 LED. 2d 656 (1973); Morissey V. Brewer 92 S.CT. 2593; Beck V. Purkett 15F 803; Tamez V. State 534 5.W. 2d 686, 692 ( Tex. CR. App. 1976 ).

The 14th amendment of the U.S. Constitution and Art. I, §19 of The Texas Constitution applies to parolees.

In the revocation hearing in question :
1) No rulings were made during the hearing regarding the objections posed by the Defendant, and were in fact, ignored. In any and all hearings, objections are always, invariably, overruled anyway.
2) A witness named Tina Ornelas was arbitrarily not allowed to testify by Abbey eventhough she was only a few feet away.
3) A witness named Alexander Simon was arbitrarily not allowed to testify by Abbey eventhough he was only a few feet away.
4) Evidence demonstrating that memory is highly flawed, plastic and subject to psychological and environmental influences was arbitrarily not allowed to be introduced.
5) An attorney was not available for the first half of the hearing.
6) Surprise evidence by Abbey was introduced in the form of witnesses, viz., Elley, Anderson, Keedy. The adverse testimony of Elley and Keedy consisted in harshly criticizing the Defendant's personality as "A nonconformist." Abbey, incidentally, signed the notification of rights on 7-2-99, acknowledging the due process procedure (and has been conducting hearings for some time, so it is not due as if he was new at this) :

> You have the right to disclosure
> That means you can see everything
> Before the hearing.

7) 100% of all legal objections raised in a hearing on any legal or procedural point are overruled, thereby revealing the travesty of due process and hearings conducted not by lawyers but bu Bureaucrats.
8) Almost 100% of all administrative appeals are turned down.
9) The objectivity of the hearing officers are tampered with whenever outside agents influence the outcome of the hearing; this is done informally but effectively within the agency outside the hearing, thereby violating Morrissey V. Brewer, Supra, which decreed that hearing officers must be neutral; Defendant's parole officer informed the Defendant the Defendant of some

details just prior to his arrest, and additional evidence has been gathered by others. This behind the scenes tampering and manipulation is not some fantasy ideation. The fact that hearing take place behind closed doors facilitates this practice.

### VII

On "Case law was extensively violated" :
The most blatant, of course, has been considered in III above involving the polygraph. Next involves statutory law regarding elementary procedure, already treated in VI.
Peripheral, yet relevant, is that the state may not revoke or threaten to revoke, parole for valid invocation of the right from self-incrimination, Minnesota V. Murphy 104 S.CT 1136 (1984); Garrett V. Broderick 392 US 279 88 SCT. 1916 (1984).
It must be kept in mind that Anderson testified at the hearing that Defendant would have been revoked if he had not submitted to a polygraph (catch-22).
OF much greater relevance, however, is that a condition of parole release is invalid is : 1) It has no relationship to the original crime  2) Relates to conduct that is not in itself criminal  3) It forbids or requires conduct that is not reasonably related to the future criminality of the offender or does not serve the statutory ends of probation, Vernon's Ann, Texas C.C.P Arts 42,12,41.12, §§ 11, 11(a); Lacy V. State 875 SW 2d 3 (Tyler, 1994); Johnson V. Texas, 672 SW 2d 621 (Corpus Christy, 1984); Tamez V. State, 534 SW 2d 686, 691 (TEX. CRIM. APP. 1976); People V. Blakeman 170 Cal. App. 2d 596, 339 P.2d 202 (1959); Simpson V. State 772 SW 2d 276.

### VIII

Defendant paid for a computer at a store in the presence of the son who took immediate possession of item from cashier. For an object to be a gift, donee must take immediate possession i.e. there is a temporal element regarding the gift, Thompson V. Dart, 746 S.W. 2d 821 (1988); Hinton V. Federal Nat. Mortg. Ass'n, 945 F. Supp 1052 (1996). Additionaly, the gift must be given in praesenti. Donor must likewise retain no control/ownership of property, Gannon V. Baker, 830 S.W. 2d 706; Oadra V. Stegall, 871 S.W. 2d 882 (1994); Soto V. First Gibraltar Bank, FSB San Antonio 868 S.W. 2d 400 (1993). Lastly, a "Bonafide Purchaser" is one who acquires the apparent legal title to property in good faith for a valuable consideration and without notice of a claim or internet of a third person under the common source of title, Valentine V. Colley, 294 S.W 2d 308.

### IX

Once the order for revocation was given, Defendant appealed within the parole bureaucracy under parole rules § 145.54 which serves as a window dressing, a facade, of impartiality. Appeal was submitted within deadline. Denial of appeal inevitably came on September 16 and Defendant was notified on September 20. Once the bureaucratic appeal is denied, a writ of Habeas Corpus

7

can be filled under TCCP 11.07, for a truly impartial review.

### X

A parent is legally responsible for providing the means for an offspring's education. In fact, a father is legally - obligated to do so, Hustace V. Black, 191 SW 2d 82. Also, the State cannot unreasonably interfere with the ability of a parent to direct the education of his child, which would apply here since the computer was bought for the purpose of providing education for Defendant's son, Ware V. Estes, 388 F. Supp. 657, affirmed 458 F. 2d 1360, certiorari denied 93 S. CT. 463, 409 US 1027, 34 L. ED. 2d 321.

### XI

The revocation hearing had a continuance at the suggestion of hearing officer, who stressed to the Defendant that if the latter could not provide documents that would show Defendant had bought/sold stocks without using a computer, then the Judgement would be detrimental. A continuance was granted during the second part of the hearing, Benke misunderstood. Defendant's silence to imply that the latter could not provide the requested documents, and reiterated at length the need for those documents to vindicate the Defendant. The documents were subsequently introduced to the chagrin of Benke, Defendant was revoked.

### XII

Assuming that Defendant had indeed used a computer with which to buy/sell stocks, this would actually be meritorious, in so far as the Cots have often expressed a desire for parolee's reformation and rehabilitation.

### XIII

Parolees do enjoy a right to privacy, Basualda V. State, 558 S.W. 2d 2 (Tex. Cr. App. 1997); United States V. Consuelo-Gonzales, 521 F. 2d 259; Tamez V. State, 534 SW 2d, 686, 691 (Tex. Cri. App. 1976). The use of a computer in order to obtain information falls under this purview.

### XIV

Defendant signed the consent form to take the polygraph and to disseminate the results under duress. It was made unmistakeably clear by his parole officer that failure to do so would inevitably result in revocation and imprisonment.

The State Of Texas
County Of Bee

_____Petitioner

8

Before me,_____Notary Public, on this day personally appeared Armando Simon, proved to me through _____to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed. Given under my hand and seal of office this_____ day of_____of 1999 AD.

_____
Notary Public in and for
The State Of Texas