```
                IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF TEXAS
                       CORPUS CHRISTI DIVISION
```

United States District Court
Southern District of Texas
ENTERED
JUL 25 2000
Michael N. Milby, Clerk of Court

| | | |
|---|---|---|
| ARMANDO SIMON | § § | |
| VS. | § | C.A. NO. C-00-090 |
| GARY JOHNSON | § § | |

## MEMORANDUM AND RECOMMENDATION
## ON CROSS MOTIONS FOR SUMMARY JUDGMENT

In this habeas corpus action, petitioner Armando Simon ("Simon") challenges the revocation of his supervised release on the grounds that he was denied due process at his revocation hearing (DE #1). He seeks immediate release and, in addition, an order authorizing him to visit his one-year old daughter (DE #15). Respondent moves for summary judgment on the grounds that Simon's petition is "mixed," containing both exhausted and unexhausted claims, such that it must be dismissed, or in the alternative, that Simon was afforded all the due process protections to which he was entitled (DE #9). Simon also moves for summary judgment (DE #4, DE #8), and opposes respondent's motion for summary judgment (DE #11, DE #16). For the reasons stated herein, it is recommended that respondent's motion for summary judgment be granted on the grounds that Simon was not denied due process at his revocation hearing.

### I. JURISDICTION

The Court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 2241, 2254.

## II. **BACKGROUND**

### A. Conviction and habeas corpus proceedings.

Simon is in the custody of the Texas Department of Criminal Justice, Institutional Division ("TDCJ-ID") pursuant to a judgment and sentence entered in Cause No. 15,894, styled <u>The State of Texas v. Armando Simon</u>, in the 23rd Judicial District Court of Brazoria County, Texas. FP[1] at 2. On May 6, 1985, a jury found Simon guilty of sexual assault and assessed punishment at nine years confinement in the TDCJ-ID. FP at 2. Petitioner did not file a direct appeal. FP at 3. Simon does not challenge the sexual assault conviction in this proceeding.

Simon has been released to parole and/or mandatory release three times. RSJ[2] Exs. A, C, and E. He was first released on parole on July 10, 1991, RSJ Ex. A, but his parole was revoked on December 17, 1993. RSJ Ex. B. Simon filed a motion for leave to file a petition for writ of mandamus to challenge the revocation of his parole, <u>Ex parte Simon</u>, Appl. No. 26,472-01[3]; however, on May 2, 1994, the Texas Court of Criminal Appeals denied leave to file. <u>Ex parte Simon</u>, Appl. No. 26,472-01 at cover.

---

[1]"FP" refers to Simon's federal petition, DE #1, and "Add." refers to the Addendum attached to his federal petition.

[2]"RSJ" refers to respondent's motion for summary judgment, DE #9, and the exhibits attached thereto.

[3]Copies of Simon's application for leave, Appl. No. 26,472-01, and his state application for habeas corpus relief, Appl. No. 26,472-02, are filed in this action at DE #14.

2

On December 2, 1994, Simon was released on mandatory supervision. RSJ Ex. C. His supervised release was revoked on February 1, 1995. RSJ Ex. D.

On November 5, 1996, Simon was released from prison for a third time to mandatory supervision. RSJ Ex. E. His mandatory release was revoked on August 16, 1999 on the finding that he had used a computer in violation of the special conditions of his administrative release. RSJ Ex. F. Simon filed a state application for habeas corpus relief challenging the August 16, 1999, revocation of his supervised release. <u>Ex parte Simon</u>, Appl. No. 26,472-02. On December 15, 1999, the Texas Court of Criminal Appeals denied the application without written order. <u>Ex parte Simon</u>, Appl No. 26,472-02 at cover.

Simon filed the instant federal on petition on February 28, 2000.

**B.   Parole revocation background and proceedings.**

As a convicted sex offender, special conditions were placed on Simon's administrative release. RSJ Ex. G at 24-26. In particular, Simon was prohibited from the following:

> Releasee shall not subscribe to, operate, use, communicate on or with, computer or otherwise electronic internet services, fax services, and bulletin boards.
>
> Releasee shall not own, maintain or operate computer equipment without a declared purpose and the authorization of Releasee's supervising parole officer.

RSJ Ex. G at 25.

3

On July 2, 1999, Simon was advised in writing that he had violated the special conditions concerning the use of a computer. RSJ Ex. G at 18-19. Simon acknowledged that he was advised of the charges against him and of his rights in the revocation process. RSJ Ex. G at 18-19.

Simon's revocation hearing began on July 29, 1999. See FP, copies of transcript from revocation hearing held on 7/29/99 and 8/2/99.[4] Bruce Benke presided as the hearing officer. Tr-1 at 1. Anthony Ramirez, a unit supervisor at the San Antonio Parole Office, District One, testified that he is the supervisor of Willie Mae Anderson and that Ms. Anderson is Simon's sex offender officer. Tr-1 at 9. Ramirez testified that one morning Simon had come in early to talk to Anderson, who had not yet arrived, and ended up talking to Ramirez. Ramirez testified that they first talked about the chaperone program, a privilege that Simon was trying to gain that would allow him to contact his child once it was born. Tr-1 at 10. To be eligible for the chaperone program, Simon would have to pass a polygraph test. Tr-1 at 10. According to Ramirez, during that conversation, Simon also reported that he was trying to sell his mother's house because it was located within 500 feet of a school zone such that Simon was prohibited from living there. Tr-1 at 10. Simon inadvertently mentioned that there was a computer

---

[4]Simon has attached copies of the hearing transcripts to his federal petition. Three tapes were transcribed from the July 29, 1999 hearing and are referred to as Tr-1, Tr-2 and Tr-3. References to the transcript from the August 2, 1999 hearing are to Tr-4.

4

at his mother's house that he used to follow stocks. Tr-1 at 10. Ramirez said he told Simon that he was not allowed to use a computer, to which Simon replied that Anderson had given him permission to do so. Tr-1 at 10. Ramirez indicated that he doubted this was so, but that he would check with Anderson. Tr-1 at 10. Ramirez testified that there was no way he had misunderstood that Simon was trading stocks over the internet. Tr-1 at 12.

Senior parole officer Anderson testified that she supervised Simon on the sex offender case load. Tr-1 at 13. Anderson testified that she had submitted a request on Simon's behalf to allow him to live with his ailing mother, despite the home's location near an elementary school, and to be able to purchase a computer for his son. Tr-1 at 13-14. Anderson reported that Simon's request was denied and that she communicated this to Simon. Tr-1 at 14. Anderson testified that Ramirez told her that Simon was using a computer. Tr-1 at 15. Anderson never told Simon that he could use a computer. Tr-1 at 15.

James B. Keedy from the South Texas Offender Program ("STOP") testified that Simon came to see him because he was concerned that his wife had been involved in an internet conversation with an individual who claimed to be a victim of sexual abuse. Tr-1 at 23-24. Simon told Keedy that he buys and sells stocks, but did not tell him that he used a computer to do so. Tr-1 at 24. Keedy

5

testified that Simon had done poorly in the STOP program. Tr-2 at 1.

Simon's wife testified that there is a computer at Simon's mother's house and that it is for Simon's son. Tr-2 at 10. She testified that Simon never used the computer. Tr-2 at 11.

### III. PETITIONER'S ALLEGATIONS

Simon challenges the August 16, 1999, revocation of his supervised release on the following grounds:

1. His First Amendment right to privacy was violated because his parole was revoked for using a computer, FP at 7, Add. at 3-5;

2. He was forced to submit to a polygraph and the results of his test were admitted during the parole revocation hearing, FP at 7; Add. at 6-7;

3. The condition of his parole forbidding him to use a computer was invalid, FP at 7, Add. at 8;

4. The government interfered with his obligation to educate his son by disallowing a computer in his home, FP at 8, Add. at 9;

5. His due process rights were violated during the revocation hearing because:

    (a) Two Charles Schwab employees were not permitted to testify, Add. at 10;

    (b) The hearing officer failed to make a ruling on Simon's objection to the admissibility of the polygraph results, Add. at 11;

    (c) The testimony of a sex counselor was a surprise, Add. at 11;

6

  (d) The evidence is insufficient to support the hearing officer's finding that Simon violated his parole, Add. at 11-12;

  (e) A letter written by Simon's son was not included in the hearing report, Add. at 12;

  (f) The process to appeal a parole revocation is inadequate, Add. at 12;

  (g) Hearing officers invariably overrule any and all objections made by the parolee, Add. at 12;

  (h) Simon was denied his right to present evidence, Add. at 12;

  (i) When the hearing officer granted Simon a continuance to gather evidence in his defense, he gave Simon a false impression that he would make a favorable recommendation, but, instead recommended revocation, Add. at 12; and

  (j) The hearing officer was not impartial, Add. at 13;

6. The revocation report is inadequate to support the revocation of his supervised release because:

  (a) There was no mention of his son's letter, Add. at 13;

  (b) Witness Anderson did not state that Simon had been using a computer, Add. at 13;

  (c) Simon's assertion that witness Ramirez was not a credible witness was omitted from the report, Add. at 13-14;

  (d) Two witnesses for the state did not know if Simon had been using a computer, Add. at 14;

  (e) The computer in question is referred to as Simon's when it is in fact Simon's son's computer, Add. at 14;

  (f) Simon's claim that he asked a parole officer if it was a violation of his parole to purchase a computer for his son and was told it was not a

7

      violation was omitted from the report, Add. at 14; and;

(g) Hearsay evidence alone is not sufficient to form the basis of a revocation, Add. at 14.

## IV. EXHAUSTION OF STATE COURT REMEDIES

As discussed in more detail below, Simon has presented the claims raised herein to the state courts, and as such, his claims have been exhausted as required by 28 U.S.C. § 2254(b) and (c). Thomas v. Collins, 919 F.2d 333, 334 (5th Cir. 1990), cert. denied, 501 U.S. 1235, 111 S. Ct. 2862 (1991).

## V. STANDARD OF REVIEW

A.  **Summary Judgment standard.**

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986); Williams v. Adams, 836 F.2d 958, 960 (5th Cir. 1988). The controverted evidence must be viewed in the light most favorable to the non-movant and all reasonable doubts must be resolved against the moving party. Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888, 110 S. Ct. 3177, 3188 (1990). Summary judgment is mandated if the non-movant fails to make a showing

8

sufficient to establish the existence of an element essential to his case on which he bears the burden of proof at trial. <u>Celotex Corp.</u>, 477 U.S. at 322, 106 S. Ct. at 2552.

B.  **Federal Habeas Corpus review.**

A state prisoner seeking federal court review of his conviction pursuant to 28 U.S.C. § 2254 must assert a violation of a federal constitutional right. <u>Gray v. Lynn</u>, 6 F.3d 265 (5th Cir. 1993). A federal writ of habeas corpus is available to a state prisoner only on the ground that he is in custody in violation of the Constitution or laws and treaties of the United States. <u>Boyd v. Scott</u>, 45 F.3d 876 (5th Cir. 1994), <u>cert. denied</u>, 514 U.S. 1111, 115 S. Ct. 1964 (1995).

Under the 1996 amendments to the federal habeas corpus statute,[5] which took effect April 24, 1996,[6] a state prisoner may not obtain relief unless the state adjudication of the claim

> "(1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding."

---

[5] These amendments are embodied in the Antiterrorism and Effective Death Penalty Act of 1995, ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214.

[6] Simon petition was filed on February 10, 2000, and as such, is subject to the provisions of the AEDPA. <u>Lindh v. Murphy</u>, 521 U.S. 320, 117 S. Ct. 2059 (1997).

9

28 U.S.C. § 2254(d) (West 1997). See also <u>Drinkard v. Johnson</u>, 97 F.3d 751, 767-68 (5th Cir. 1996), <u>cert. denied</u>, 520 U.S. 1107, 117 S. Ct. 1114 (1997).

Further, in review of a state prisoner's federal habeas petition, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Unless a petitioner offers clear and convincing evidence in rebuttal, federal habeas courts are required to accept as conclusive both the factual findings and the credibility choices of the state courts. <u>Jackson v. Johnson</u>, 150 F.3d 520, 524 (5th Cir. 1998), <u>cert. denied</u>, 119 S. Ct. 1339 (1999).

## VI. **DISCUSSION**

A. **Respondent's motion for summary judgment.**

   1. *Dismissal of mixed petition.*

Respondent seeks dismissal of Simon's petition arguing that Simon has included unexhausted claims (claims 3, 5(e), 5(h), and 6(c)) with exhausted claims such that it is a "mixed" petition subject to dismissal. See <u>Castille v. Peoples</u>, 489 U.S. 346, 349, 109 S. Ct. 1056, 1059 (1989)(a petition under 28 U.S.C. § 2254 "must be dismissed if state remedies have not been exhausted as to any of the federal claims"). See also <u>Murphy v. Johnson</u>, 110 F.3d 10, 11 (5th Cir. 1997)(district court must dismiss "mixed" habeas

corpus petition containing both exhausted claims and unexhausted claims for failure to exhaust); Thomas v. Collins, 919 F.2d 333, 334 (5th Cir. 1990), cert. denied, 501 U.S. 1235, 111 S. Ct. 2862 (1991)(habeas corpus petition must be dismissed if any issue has not been exhausted in the state courts; complete state remedy exhaustion is appropriate for the sake of comity and judicial efficiency).

In his summary judgment response, Simon argues that claims 3, 5(e), 5(h) and 6(c) were in fact included in his state habeas corpus application, and he provides the page number on which each claim can be found. See Ex parte Simon Appl. No. 26,427-02 at 3 (claim 3), at 10 (claims 5(e) and 6(c)), and at 11 (claim 5(h)). Simon has exhausted his state court remedies, and it is recommended that respondent's motion for summary judgment to dismiss the petition as "mixed" be denied.

   2.   *Merits of Simon's claims.*

Although divided into numerous claims, Simon's challenge to the revocation of his parole is that he was denied due process at his parole revocation hearing.

In Morrissey v. Brewer, 408 U.S. 471, 92 S. Ct. 2593 (1972), the Supreme Court held that the following due process requirements apply to parole revocation hearings:

   1.   Written notice of claimed violations;

   2.   Disclosure of unfavorable evidence;

11

    3.    Opportunity to be heard in person and to present witnesses and documentary evidence;

    4.    Right to confront and cross-examine adverse witnesses, unless there is good cause for not allowing confrontation;

    5.    A neutral and detached hearing officer; and

    6.    A written statement as to the reasons for revocation.

Morrissey, 408 U.S. at 489, 92 S. Ct. at 2604.

The record establishes that Simon was afforded all the due process protections to which he was entitled.

Simon was given advance written notice of his parole violations. RSJ Ex. G at 18-20. In particular, on July 2, 1999, Simon was informed that he was charged with violating the special conditions of his parole prohibiting his use of a computer, and further advised of his rights in the parole revocation proceeding. RSJ Ex. G at 18-19. Simon was present at the hearing and heard all of the testimony. Tr-1 through Tr-4. In fact, Simon specifically questioned each of the witnesses that testified. Id. Simon was shown all the documentary evidence, and, except for certain polygraph results, he did not object to its introduction. See Tr-1 at 5-8. Simon was given the opportunity to be heard and to present witnesses and documentary evidence of his own. RSJ Ex. G. at 5, 7-9, 13, 15. In fact, the hearing was continued to permit Simon the opportunity to gather evidence from Charles Schwab to demonstrate that his stock trades were made over the phone rather than the computer. Tr-3 at 16. When the hearing was reconvened on August

12

2, 1999, Simon was represented by counsel. Tr-4 at 1. Simon presented a letter from his current employer stating that his trades were made over the phone, RSJ Ex. G at 41; however, the documents Simon produced from Charles Schwab did not reveal whether or not he used a computer. RSJ Ex. G at 44-88.

Simon contends that his hearing officer was not impartial (claim 5(j)). Add. at 13. However, Simon fails to point to any part of the transcript to support this claim, nor did he raise an objection at the hearing as to the neutrality of the hearing officer, even after he was represented by counsel. See RSJ Ex. G at 4, 12. This claim is no more than a conclusory allegation and cannot provide the basis for habeas corpus relief. United States v. Flores, 135 F.3d 1000, 10007 (5th Cir. 1998).

Simon also suggests that his hearing officer denied him due process when the officer gave him a false impression that he would rule in his favor (claim 5(i)). Add at 12. Petitioner fails to support his claim that he has a constitutional right not to be given a "false impression" concerning the outcome of the revocation ruling. Moreover, the record clearly illustrates the contrary-- that the hearing officer was going to recommend revocation but continued the hearing to allow Simon to get evidence from Charles Schwab that might refute the testimony that Simon was using a computer. Tr-3 at 1, 2, 3. Simon took advantage of the

13

continuance, but was unable to produce such documentation from Charles Schwab. Tr-4. This claim is without merit.

Simon was given a written statement which details the reasons for the revocation. RSJ Ex. G at 3-11, 12-17. This report clearly reveals that, based on the testimony of all the witnesses, there was sufficient evidence to find that Simon had used a computer in violation of the terms of his supervised release.

In claims 2 and 5(b), Simon claims that he was "forced" to submit to a polygraph and that the results were used to revoke his parole. These claims fail to raise a constitutional violation and are not supported by the record. The record reveals that Simon had applied for chaperone privileges, and, to obtain this privilege, he was required to take and pass a polygraph. After Simon inadvertently mentioned that he traded stocks over the internet to Ramirez, Ramirez and Anderson decided to include questions concerning Simon's computer use on the polygraph test. Tr-1 at 11. Simon failed that polygraph due to deceptive results. RSJ Ex. G at 16. The polygraph results were not admitted into evidence; rather, the fact that he failed the test was noted in James Keedy's letter to Anderson. Tr-1 at 5. Thus, the record refutes any allegation that Simon was forced to take a polygraph. Moreover, Simon's parole was not revoked as a result of his failing the polygraph; it was simply noted in Keedy's letter when he assessed Simon's poor performance in the STOP program.

14

Simon was afforded all the due process protections to which he was entitled under <u>Morrissey</u>.

Simon fails to establish that the state court's rejection of his claims challenging the revocation of his parole was contrary to clearly established federal law or involved an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d). Simon is not entitled to habeas corpus relief.

B.  **Simon's motion for summary judgment and summary judgment response.**

Prior to respondent filing his answer, Simon filed a motion for summary judgment (DE #4). In his motion, Simon argues that his parole was revoked for "two alleged technical violations," specifically, subscribing to the internet and for using a computer to buy and sell stocks. Simon points out that neither computers nor stocks were a factor in his original offense. He argues that no objective evidence was presented to establish that he used a computer. He also argues that the restrictions themselves are "tantamount to government censorship."

On June 29, 2000, Simon filed a response to respondent's motion for summary judgment (DE #11). In his response, Simon complains that the special conditions of his parole prohibiting his use of a computer constitutes a violation of his first amendment rights. DE #11 at 1.

15

Simon's claim that the special conditions of his supervised release prohibiting him from using the internet and/or a computer are unconstitutional is without merit.

When a prisoner is conditionally released on parole, "the Government retains a substantial interest in insuring that its rehabilitative goal is not frustrated and that the public is protected from further criminal acts by the parolee." Birzon v. King, 469 F.2d 1241, 1243 (2d Cir. 1972). To that end, the government may infringe the first amendment rights of a parolee so long as the restrictions are reasonably and necessarily related to the advancement of some justifiable purpose. Id. See also United States v. Ritter, 118 F.3d 502, 504 (6th Cir. 1997) (rejecting First Amendment challenge to condition of supervised release requiring bank embezzler to notify present and future employers about his conviction); Malone v. United States, 502 F.2d 554 (9th Cir. 1974) (upholding conditions of probation prohibiting defendant convicted of exporting guns to the Irish Republic Army from participating in any American Irish Republic movement, belonging to any Irish organizations, cultural or otherwise, or visiting any Irish pubs).

In this case, Simon was convicted of engaging in sexual relations with two females under the age of 17 years old. RSJ Ex. G at 23. The special conditions prohibiting Simon's use of a computer and access to the internet are reasonably related to preventing Simon from participating in child pornography. The challenged parole conditions do not violate Simon's first amendment

16

rights.[7]  Moreover, Simon agreed to the special conditions prior to his release on mandatory supervision and was aware that violating these conditions could lead to the revocation of his parole. RSJ Ex. E.  It is recommended that Simon's motion for summary judgment be denied.

## VII. RECOMMENDATION

For the foregoing reasons, it is recommended that Simon's motion for summary judgment be denied, that respondent's motion to dismiss for failure to exhaust be denied, that respondent's motion for summary judgment be granted, and that Simon's petition for writ of habeas corpus be denied.

Respectfully submitted this 24 day of July, 2000.

_____
JANE COOPER-HILL
UNITED STATES MAGISTRATE JUDGE

---

[7] The one relevant case relied on by Simon is not to the contrary. In Guajardo v. Estelle, 568 F. Supp. 1354 (S.D. Tex. 1983), the district court held that a prison rule may infringe on inmates' first amendment rights if necessary to protect a governmental interest such as security or rehabilitation.  The other decisions cited by Simon, City of Erie v. PAP's A.M., 120 S. Ct. 1382 (2000), Matthews v. Wozencraft, 15 F3d 432 (5th Cir. 1994), and San Antonio Express-News v. Roman, 861 S.W.2d 265 (Tex. App.-San Antonio 1993) examine the first amendment in the context of nude erotic dancing, published books, and newspapers, and do not address first amendment issues in the context of parolees.

<u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **TEN (10) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1)(C), Fed. R. Civ. P. 72(b), and Article IV, General Order No. 80-5, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error*, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).