# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# CORPUS CHRISTI DIVISION

United States District Court
Southern District of Texas
FILED

AUG 11 2000

MICHAEL N. MILBY CLERK

ARMANDO SIMON §
§
§
V § C.A. NO. C-00-090
§
§
GARY JOHNSON §
§

## OBJECTIONS

Magistrate Judge's Memorandum and Recommendation on Cross Motion for Summary Judgement was filed on July 25, 2000 and received on August 1, 2000 AD. The objections to the document's contents are as follows. A legible, handwritten copy is being submitted due to a ten-day deadline followed by a typed copy at a later time for the Court's convenience. A copy of this document is being sent to Respondent on August 7, 2000 AD.

### I

Petitioner mailed a motion to strike to the Court. The basis of the motion was threefold. First, a May 2nd Order for Service of Process gave a deadline for Respondent to submit his response, once served, in this case it being June 15. Respondent failed to meet the deadline. Respondent filed a motion for June 20 instead. This in spite of having access to both fax and overnight mail. Secondly, it was not a proper response but a motion, thereby ignoring some of the grounds raised in the original Habeas Corpus Writ. Consequently, Respondent never actually submitted a response. Said Order very specifically differentiates between a response. And a motion as being two distinct, separate legal entities, having different deadlines, counterresponses, etc. See stipulation #4 and #7 in said Order. As such, the undeniable fact remains that to this date Respondent has never really submitted a proper response, and as such has forfeited a defence and all subsequent motions become moot. Third, a subsequent Order gave the Respondent another

1



deadline in which to submit a document or the above motion would be struck. The deadline was met but Respondent never sent a copy to Petitioner as stipulated in the May 2nd Order, which stated that if a copy of a filed document was not sent to the adversary the document would be struck. A copy was never sent to Petitioner. The document should therefore be struck. Hence, Respondent's original motion for Summary Judgement should also be struck, if not on the basis of Petitioner's motion to strike then on the basis of both Orders.

Although there was no deadline and because of Petitioner's isolation and restriction due to being incarcerated, the motion to strike may have arrived after the recommendation was filed.

## II

Respondent employed a pick-and-choose strategy in response to the Habeas Writ in His quasi-response, the motion for summary judgement, leaving some of the grounds raised by the Petitioner unchallenged.

One of the grounds left unchallenged by Respondent and bypassed by Magistrate Judge is that of the validity of the parole restrictions for which Petitioner was violated. A parole bureaucracy is not given carte blanche over a parolee to impose whatever whimsical conditions it desires. U.S. v. Mills, 959 F 2d 516; Porth v. Templar, 453 F. 2d 330 (1971); People v. Peterson, 62 Mich. App. 258, 233 N.W. 2d 250 ( 1975 ); Springer v. U.S., 148 F. 2d 411, 416 ( 1945 ).

A condition of parole is invalid if : 1) It has no relationship to the original crime 2) Relates to conduct that is not itself criminal 3) It forbids or requires conduct that is not reasonably related to the future criminality of the offender. People v. Blakeman, 170 Cal. App. 2D 596, 339 P. 2D 202 ( 1959 ); Lacy v. State, 875 S.W. 2D 3 ( Tyler 1994); U.S. v. Mills, Supra.

Occupational restrictions imposed during supervised release must be minimum and reasonably necessary, U.S. v. Mills, supra. Petitioner was self-employed in the purchase and sale of company stocks, approved by his parole officer and it would have been reasonably to conclude that at some point he might decide to utilize computers for this purpose.

## III

Another ground of the Habeas writ which was not addressed was the right of a parent to educate his child. Ware v. Estes, 388 F. Supp. 657, affirmed 458 F. 2D 1360 certiorari denied 93 S. CT. 463, 409 U.S. 1027, 34 L. ED. 2D 321.

The Petitioner paid for his son's computer, who set it up at his grand mother's home, so that he could attend summer classes in Orlando, Florida through the internet while he visited his father, stepmother and grandmother.

This issue was also not addressed by Magistrate Judge.

## IV

Petitioner has previously pointed out in his rebuttal to Respondent's motion that Respondent has challenged neither tha facts of the case nor the Constitutional issues cited by Petitioner, with the exception of due process under <u>Morrissey</u> (see below).

This include the issue of First Amendment Protection of free press and free speech. This Constitutional ground was raised in the original State petition, The Writ of Habeas Corpus,The Writ's Addendum, and Petitioner's motion for Summary Judgement. Magistrate Judge is mistaken in ommitting it from III, the original allegations ( page 6 ), through addressing it in Petitioner's motion ( page 15 ).

The two original parole restrictions for which Petitioner was revoked for are overly broad in their prohibition :

> Releassee shall not subscribe to, operate, use,
> communicate on or with, computer or other
> wise electronic internet devices, fax services,
> and bulletin boards.

> Releassee shall not own, maintain or operate
> computer equipment without a declared purpose
> and the authorization of releassee's supervising
> parole officer.

These restrictions are <u>prima facie</u> inherently, blatantly un Constitutional, surprising only in that telephones, radios or regular posted mail was not included. These overbroad restrictions prohibit a parolee from faxing mail to a district clerk/ court; they prohibit the sending or receiving of E-mail; they prohibit obtaining any kind of information of any kind. They are so broad in their censorship that having a diskette contining The U.S. Constitution is a legitimate ground for sending a person to prison- an Orwellian concept. It also needs to be pointed out that a computer and the internet's <u>raison d'etree</u> is the exchange of information, almost by definition,

3

i.e., free press and free speech. Both are inextricably linked to the First Amendment and as such completely indefensible from a Constitutional viewpoint. As the technology for communication has changed, the form of communicating, letters, printed paper, telephone, telegraph, radio, film, television, and now computers, the prohibiton against censorship has remained steady, though it has at times momentarily and eventually ineffectively occured for some "higher purpose," only to be ultimately swept aside. This has become so self-evident, so elementary, that it is a wonder that it even has to be argued at this stage. The only real question is at what level will this Writ of Habeas Corpus be approved.

The Respondent by passes the issue. The Magistrate Judge does not and rules that the issue is without merit. She cites Malone v. U.S. 502 F. 2D 554 ( 1974 ), wherein an IRA terrorist was proscribed from joining militant Irish organization. Her argument is non sequitur. At no point did the present Petitioner, in the original offense, employ stocks, a computer or a fax machine nor was there even an internet at that time. Magistrate Judge is comparing apples and oranges. Also cited is U.S. v. Ritter , 118 F. 3D 502, 504 ( 1997 ), wherein an ex-embezzler must notify future employers of his past offence. Again, this is immaterial. Petitioner's original offence involved having a consensual affair with a teenager; at no point was a computer or stocks involved nor the internet. At a later point, Magistrate Judge states that The First Amendment decisions cited by Petitioner do not directly pertain to parolees. Malone, supra , and Ritter, supra , likewise do not involve free speech, free press, or computers.

The overall argument is that a releassee's rights can be abriged, not annulled. "To that end, the goverment may infringe The First Amendment Rights of a parolee so long as the restrictions are reasonably and necessarily related to the advancement of some justifiable purpose." ( Memorandum, page 16 ) Petitioner is curious as to how this pertains to using a computer with which to buy and sell stocks. Otherwise, the argument is illogical and immaterial. Petitioner was violated for allegedly utilizing a computer with which to buy stocks; this is what the allegation by parole supervisor Ramirez specifically states ( hearing report page 4 of 9; hearing transcript tape 1 of 3, page 10, lines 23-25 ).

Moreover, Constitutional Rights do not completely disappear once a person is on parole, though they may be judiciously, reasonably, diminished. Gardner v. Broderick, 392 U.S. 279 88 S. CT. 1916 ( 1984 ); Beck v. Purkett , 11F. 3D 15 F. 803; Gagno v. Scarpelli, 411 U.S. 778, 93 S. CT. 1975 36 L. Ed. 2D 656 ( 1973 ); Minnesota v. Murphy , 104 S. CT. 1136 ( 1984 ); McBride v. Johnson , 118 F. 3D 432 ( 1997 ); U.S. v. Consuelo-Gonzalez , 521 F. 2D 259; U.S. v. Mills , 959 F. 2D 516.

By completely eliminating the use of fax, computers, and the internet, Magistrate Judge has thrown out the baby with the bathwater. It is not that the restrictions are against certain

4

(arguable) topics. It is rather that the overall manner of communication is eradicated. In the case of <u>Malone</u>, <u>supra</u>, the individual in question was not prohibited from joining all clubs and or organization like The Boy Scouts, The Democratic Party, or The Book of The Month Club. He was specifically enjoined from joining Irish nationalist groups. In the case of <u>Ritter</u>, <u>supra</u>, the individual in the question was not ordered to tell his neighbors, his church congregation, his babysitters or his gas station attendant about his embezzling past, just his employers, a reasonable condition. Furthermore, all parolees are forbidden from engaging in social relations with ex-convicts, not all human beings.

The rights of prisoners to receive mail, which includes publications and letters, is likewise a First Amendment protection. Any restrictions on sending/ receiving mail are highly specific and not to be deviated from. The Courts have never stated that prisoners are prevented from using the post <u>in toto</u>. <u>Procunier v. Martinez</u>, 416 U.S. 396, S. CT. 1800, 40 L. Ed. 2D 224 ( 1974 ); <u>Wolff v. Mcdonnell</u>, 418 U.S. 539, 576-576, 94 S. CT. 2963, 41 L. Ed. 2D 935 ( 1974 ); <u>Vest v. Lubbock Cty</u>. <u>Com'rs. court</u>, 444 F. Supp. 676 ( W.D. Wis. 1977 ); <u>Brenneman v. Madigan</u>, 343 F. Supp. 707 ( N. D. Ohio 1971 ); <u>Hernadez v. Estelle</u>, 788 F. 2D 1154; <u>Garrett v. Estelle</u>, 424 F. Supp. 468; <u>Guajardo v. Estelle</u>, 568 F. Supp. 1354. Again, it must be pointed out that the internet and computers are being used to transmit and receive mail called E-mail.

Had Petitioner been found to have been viewing pornographic images like <u>Playboy</u> or Goya's <u>La Maja Desnuda</u> or been reading pornographic texts like Puzo's <u>The Godfather</u> or Lawrence's <u>Lady Chatterley's Lover</u>, then there might be a solid foundation to the revocation. Had the parole bureaucracy utilized a surgical approach in monitoring the computer's hard drive for content during home visits instead of an explosive approach, that, too, would have had a solid foundation.

Magistrate Judge further states in the recommendation, "The special conditions prohibiting Simon's use of a computer and access to the internet are reasonably related to preventing Simon from participating in child pornography." ( page 16 ) This statement is fallacious in the extreme. What "child pornography"? this is an unproven, unsubstantiate accusation. Petitioner is not arguing to be allowed to receive pornography of any kind; This argument is a straw man. Additionally, this ephemeral "child pornography" that Magistrate Judge is so concerned about is a different crime altogether. To state that the Petitioner's First Amendment protection should be completely negated to the overall use and ownership of fax equipment, computer equipment, and the internet on the offhand chance that Petitioner should decide to obtain pornography at some distant, unspecified, future time is transparently fallacious in its assumption. This argument's absurdity becomes even more obvious if we use the same argument for owning and using telephones ( since phone sex exists ), VCRs ( adult videos are available ), television ( adults

5

subjects may be shown ), cable ( the Playboy channel is available ), cars ( possible means of kidnapping ), mail ( adult material may be received ), all magazines ( somewhere there may be child pornography magazines ); all books ( there may be child pornography books around somewhere ), all clubs ( there are sex clubs in existence ), movies ( some show adult material and there is a film called Kids reputedly showing underage teenagers engaging in sex ), and, lastly, all conversation ( since at some point a dirty joke may be uttered or a serious sexual topic broached ).

The Magistrate Judge further points out ( page 17 ) that the decisions cited by Petitioner do not directly address First Amendment issues involving parolees and that in Guajardo v. Estelle, supra , an inmate's protection can be infringed for specific security reasons; it does NOT sanction a blanket prohobition on all mail. Petitioner, at any rate, doubts that there is a precedent involving a revocation of a parole due to utilizing a computer with which to buy stocks, making this case unique.

In summary, precedent is quite clear on this and abundantly so : the state may curtail parolee's and prisoners' rights, but to a minimum and within reasonable limits, as opposed to wholesale eradication of rights.

Lastly, Magistrate Judge states that Petitioner "agreed to special conditions prior to his release on mandatory supervision....." ( page 17 ) on November 5, 1996. The record proves that Magistrate Judge is clearly mistaken ( Respondent's motion, exhibit 6, page 21). Petitioner did not do so. On February of next year he did sign a long, long, long list of restrictions but only as acknowledgement-not agreement-and did so, as always, under threat of instant revocation and incarceration if he did not sign. Furthermore, being under mandatory supervision, as opposed to parole, he did not have to agree to abide by any rules prior to being released.

## V

In regards to the Fifth Amendment grounds, Magistrate Judge states, "The polygraph results were not admitted into evidence; rather, the fact that he failed the test was noted in James Keedy's letter to Anderson." ( page 14 ) The record conclusively supports the fact that Magistrate Judge is once again mistaken. The inflammatory tests and their results were indeed admitted into evidence and discussed at the hearing ( hearing report, page 3 of 9, state's exhibit D ( 3 pages ); said report is included in Petitioner's writ and was included also in Respondent's motion as exhibit G, page 3 of 9/ page 5; revocation hearing transcript, tape 1 of 3, page 5, lines 30-46; page 6, lines1-31; page 25, lines 8-46; page 26, lines1-27; page 28, lines 33-45; page 31, lines 40-44). Keedy's letter with its two attached polygraph reports were included in the hearing

report, a legal document, which was submitted to the parole board for its decision as to Petitioner's disposition ( Respondent's motion, exhibit G, pages 31-33 ). One of the two polygraphs was over a year old and totally irrelevant to the hearing. The record supports this.

Petitioner strongly objected their introduction into evidence at the hearing on the grounds that the polygraph is inaccurate, its use at the hearing was illegal, a previous irrelevant polygraph was also being considered, and that Petitioner was coerced into taking it ( hearing transcript tape 1 of 3, page 6, lines 13-31 ). The objection was also submitted in writting, citing legal cases supporting the objection ( transcript, page 6, line 40-46; Respondent's motion, exhibit G, page 36, page 42 ).

Magistrate Judge Further makes the additional mistake of concluding that Petitioner agreed to take the polygraph in order to obtain chaperone privileges. "Thus, the record refutes any allegation that Simon was forced to take a polygraph." ( page 14 ) Magistrate Judge is mistaken and the record proves it again and not just in the written-and-verbal objection mentioned in the previous paragraph. Petitioner's parole officer admitted at the hearing that refusal to submit to the annual polygraph would resort in funitive sanctions including revocation and incarceration ( hearing transcript, tape 1 of 3, page 19, lines 24-45). It is vitally important to point out that the polygraph is mandated by the state. The record conclusively substantiates this government policy of coercion of parolees into submitting to a polygraph.

A citizen, aven a parolee, may refuse a polygraph. <u>Richardson v. City of Pasadena</u> , 500 SW 2D 175, reversed 513 SW 2D 1; <u>Minnesota v. Murphy</u> , 104 S. CT. 1136 ( 1984 ); <u>Lefkowitz v. Turley</u> , 414 U.S. 70, 77, 94 S.CT. 316, 322, 38 L.Ed. 2D 274 ( 1973 ); <u>Garrett v. Broderick</u> , 392 U.S. 279 88 S.CT. 1916 ( 1984 ). The parole bureaucracy had simply shrugged off Petitioner's protestations and insisted on submission to the polygraph-or else. They did not desist as they were supposed to do.

At any rate, Magistrate Judge's confusion stems from Petitioner desiring to live with his family in peace after the upcoming birth of a child since one of the numerous restrictions involve avoiding contact with all minors including family members. Three options were being considered. One involved going through a divorce in order to obtain visitation rights; this had previously by passed the restriction as pertained to a previous marriage ( transcript, page 25-26 ). Another was living apart for the remaining year of parole, which the couple had begun to do ( transcript, page 18-19, 25-26 ). A third was chaperone privileges which required a polygraph. Since Petitioner was about to take the forced $200 annual test anyway, it was decided simply to utilize it. The record shows that the first option, however, had begun to take effect by filing divorce papers; once revocation took place, it became moot and the divorce proceedings dropped.

7

If there are any questions as to this, a hearing with subpoenaed witnesses will clear the Court's confusion.

Apropos of coercion, see <u>Schneckloth v. Bustamante</u>, 412 U.S. 218, 93 S.CT. 2041, 36 L.Ed. 2D 854 ( 1973 ); <u>Bumper v. N. Carolina</u>, 391 U.S. 543, 548, 88 S.Ct. 1788, 1792, 20 L. Ed. 2D 797 ( 1968 ).

## VI

As to due process, <u>Morrissey v. Brewer</u>, 408 U.S. 471, 92 S.CT. 2593 ( 1972 ) puts forth six requirements for a parole revocation. Magistrate Judge asserts that all six requirements were met in the present case. Magistrate Judge is once again mistaken and the record substantiates it. "Simon was given the opportunity to be heard and to present witnesses and documentary evidence of his own." ( page 12 ) Petitioner asked for two witnesses who were physically present a few yards away to testify but he was denied (transcript tape 2 of 3, page 8, lines 18-40 ). The unit parole officer, in fact, testified in a slapdash manner for the witness in a hearsay manner which was not at all what she was going to testify; it is very evident that he was being obstructive. This was inspite of reaffirming Petitioner's right to have witnesses heard ( transcript 1 of 3, page 3, line 4 ). Evidence was not allowed to be introduced by Petitioner ( transcript tape 1 of 3, page 29, lines 1-45 ). It is vitally important to note that evaluation of the worth of a witness or evidence cannot be properly made if they are not allowed to be introduced. <u>Morrissey</u> makes no mention of this excuse to negate one or more of the six requirements.

Magistrate Judge further claims that Petitioner's assertion that the hearing officer was biased, contrary to <u>Morrissey</u>, is simply conclusory allegation. Admittedly, this lack of impartiality did not become evident until after the hearing report was available. Petitioner's claim of bias rests on three points : 1) No evidence-none whatsoever-was ever presented to substantiate the allegation that Petitioner was subscribed to an internet service; evidence was presented that Petitioner's wife was the one subscribed ( transcript 2 of 3, page 22, lines 1-46 ) yet, Petitioner was found guilty of having broken the restriction 2) In the hearing report the statement is made that Petitioner's personality is sufficient grounds for incarceration and dismisses the wife's subscription as unimportant ( hearing report, page 3 of 6 ). 3) Numerous errors are evident in the hearing report which may have been deliberate ( writ addendum, pages 13-14 ).

Elsewhere, Magistrate Judge states "Simon was shown all the documentary evidence, and, except for certain polygraph results, he did not object to its introduction." ( page 12) This is another mistake. Petitioner kept being given surprise documentary evidence, contrary to the rules dictating prior discovery, to which there was objection ( transcript tape 1 of 3, page 7, lines

8

29-34; tape 3 of 3, page 1, lines 35-37; the word "unbearably" here should read "invariably"). Prior discovery had been guaranteed by the hearing officer ( writ addendum, evidence #6). All the witnesses against Petitioner were surprise witnesses.

Regarding the Charles Schwab statements, Magistrate Judge states that they did not reveal the use of computer or not. Admittedly, the evidence is not as clear as it could be hoped for ( transcript tape 1 of 1, page 19, lines 1-40; Respondent's motion, exhibit G, pages 45-88 ). However, the amount of the commissions indicate that the trades were carried out through Schwab's discount brokers, and that said commissions were similar before and after. The advent of the computer.

Magistrate Judge, in referring to the hearing report written up after the hearing and used by the parole board to make its decision as to whether or not to revoke, states, "This report clearly reveals that, based on the testimony of all the witnesses, there was sufficient evidence to find that Simon had used a computer in violation of the terms of his supervised release." ( page 14 ) Magistrate Judge is mistaken. No one testified having seen Petitioner use a computer. No documents were presented that would demonstrate that Petitioner had used a computer. The only evidence presented to that effect was Ramirez' testimony that Petitioner had told him that he had used the computer with which to buy stocks. Petitioner has consistently denied this as a misunderstanding, yet, throughout, there has been a double standard as to his testimony-absolutely unimpeachable in self-incrimination and absolutely worthless in self-defence. Even the hearing officer admitted that the evidence against Petitioner was questionable ( transcript tape 3 of 3, page 11, lines 29-46). All the weight of the evidence is for acquittal.

It is a requirement that the facts upon which revocation is based must be verified and that knowledge concerning parolee's behavior be accurate. Matter of J.M.D. , 980 SW 2D 811; Morrissey , supra . "....Termination of that liberty requires an informal hearing to give assurance that the finding of a parole violation is based on verified facts to support revocation ( at 2595 )."

Petitioner does agree with Magistrate Judge in that the report does indicate his having broken a condition of parole. The report is flawed. That has been one of Petitioner's contentions all along and are used as grounds in the habeas writ. The numerous errors are enumerated in the writ's addendum ( pages 13-14 ). Again, the report is the instrument that the parole board utilizes in coming to a decision; if the reports is based on error, as proven by the transcript, then Petitioner has been denied due process.

Another point. Petitioner was charged with violating two restrictions. At no point throughout the hearing was any evidence presented, even hearsay evidence, that Petitioner was subscribed to the internet. None. ( see both the hearing transcript and the hearing report in their entirety ). Yet,

9

Petitioner was found guilty. How can Magistrate Judge claim that due process took place in the hearing ? <u>Morrissey</u> insists on verified facts.

From the specific to the general. <u>Morrissey</u> does not occur <u>in vacuo</u> ; other decisions come into play. <u>U.S. v. Mills</u> , <u>supra</u> ; <u>U.S v. Smith</u> , 618 F. 2D 280. Respondent in his motion and Magistrate Judge in her memorandum put forth the idea that as long as the formalities of <u>Morrissey</u> appear to take place, i.e., the six requirements, then anything that takes place in the hearing and the overall revocation process is permissible, another triumph over substance. Hence, they overlook as immaterial the flawed report, the finding of guilt at no, and, at dubious, evidence, the introduction of surprise evidence, the contradicting of case law, and the other grounds raised in the habeas corpus petition.

## VII

Petitioner finds himself restricted to Garza East Unit within Texas gulag. It is a transit unit and therefore is severely limited in its legal material in its law library. The only Federal Court documents in it are The Supreme Court Reporter vols. 100-119. There are also a handful of copies of federal cases floating around among the inmate population. There was particularly a dearth of decisions to bolster the argument at III. Petitioner has asked to be transferred to a regular unit which has a better stocked law library but has been ignored and has been told that he will be there for another year before being transferred. Petitioner has asked the law library for an affidavit to verify the above but was informed that it is not allowed.

## VIII

Respondent has never refuted Petitioner's motion for summary judgement, filed on May 25th, 2000 AD, answer due by Respondent in 20 days. Fed. rules civ. proc. rule 56, 28 U.S.C.A. Respondent has forfeited a defence to the motion.

## IX

Magistrate Judge has written, "The controverted evidence must be viewed in the light most favorablr to the non-movant and all reasonable doubts must be resolved against the moving party. <u>Lujan v. National Wildlife Fed'n</u> , 497 U.S. 871, 888, 110 S. CT. 3177, 3188 ( 1990 ). "On the

10

basis of this and the afore mentioned, Petitioner moves that Respondent's motion be dismissed as having no merit."

Armando Simon
TDC # 522486
Garza East Unit
HC 02 BOX 985
Beeville, Tx 78102

11