# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

United States District Court
Southern District of Texas
FILED

SEP 0 5 2000

Michael N. Milby, Clerk of Court

| | | |
|---|---|---|
| **ARMANDO SIMON** | § § § | |
| **V** | § § | **C.A. NO. C-00-090** |
| **GARY L. JOHNSON** | § § | |

## MOTION FOR REHEARING

NOW COMES ARMANDO SIMON, acting prose , moves for a rehearing. A said motion may be submitted to the Court for reconsideration of case in order to bring to the Court's attention any errors or oversight in the first instance. Yee v. State Board of Equalization of California ,16 Cal. App. 2D 417, 60 P. 2D 322, 323; Kerr-McGee Nuclear Corp. v. New Mexico Environmental Imp. Bd. App., 97 N.M 88, 637 P. 2D 38, 46; In Re Hooker's Estate , 173 Misc. 515, 18 N.Y.S. 2D 107, 110.

A typed version will follow this handwritten motion for the Court's benefit.

### I

On July 25, 2000 Magistrate Judge submitted a Memorandum and Recommendation regarding Petitioner's Writ of Habeas Corpus, recommending dismissal. In it, Magistrate stated that Petitioner's claim of violations of the First, Fifth and the Due Process clause of the Fourteenth Amendment in the process of his parole revocation for a) utilizing a computer in order to obtain stock prices, b) being subscribed to the internet, were without merit. Neither stocks, nor computers, nor the internet were relevant during the original offence and no evidence whatsoever was presented at the hearing that showed that Petitioner had been subscribed to the internet.

### II

Petitioner would show that the Memorandum and Recommendation is based on error of fact. Specifically :

1

1) Magistrate states that the polygraphs were not entered into evidence. ( page 14 ) The record supports the fact that Magistrate is mistaken; they were not only discussed during the hearing, but the polygraph reports, along with Mr. Keedy's cover letter, were entered into the documentary record. ( Respondent's motion for summary judgement, ( R-MSJ ) exhibit G, pages 31-33; hearing report, page 3 of 9, State's exhibit D ( 3 pages ); revocation hearing transcript, tape 1 of 3, page 5, lines 30-46; page 6, lines 1-31; page 25, lines 8-46; page 26, lines 1-27; page 28, lines 33-45; page 31, lines 40-44; R-MSJ, exhibit G, page 36, page 42 ).

2) Magistrate makes the additional mistake in stating that the annual polygraph was not coerced. ( page 14 ) Magistrate is mistaken and the record proves it in that Petitioner's parole officer admitted that refusing to submit to the annual polygraph would resort in incarceration. (Hearing transcript, tape 1 of 3, page 19, lines 24-45; transcript, page 6, lines 40-46; R-MSJ, exhibit G, page 36, page 42). This was, essentially, an example of Hobson's choice. Malloy v. Hogan , 378 U.S. 1,8, 84 S.CT. 1489, 1493, 12 L.Ed. 2D 653 ( 1964 ); Garrity v. New Jersey , 385 U.S. 493, 87 S.CT. 616, 17, L. Ed. 2D 562 ( 1967 ); Lefkowitz v. Cunningham ,431 U.S. 801, 806, 97 S.CT. 2132; Sanitation Men v. Commissioner of Sanitation ,392 U.S. 280, 283-284, 88 S.CT. 1917, 1919-1920 L. Ed. 2D 1089 ( 1968 ).

3) Magistrate states that Petitioner was allowed to call witnesses and submit documentary evidence at the revocation hearing. ( page 12 ) Magistrate is once again mistaken and the record proves it in that he was not allowed to do so. ( transcript tape 2 of 3, page 8, lines 18-40; transcript tape 1 of 3, page 29, lines 1-45 ) This refusal by the State goes against the firm guidelines put forth in Morrissey v. Brewer , 408 U.S. 471, 92 S.CT. 2593 ( 1972 ).

4) Magistrate states that, apart from Petitioner's objection to the introduction of the polygraph results, Petitioner did not object to the State documentary evidence. ( page 12 ) Magistrate is, yet again, mistaken. Petitioner kept being given surprise documentary evidence, contrary to the rules dictating prior discovery, to which he objected ( transcript tape 1 of 3, page 7, lines 29-34; tape 3 of 3, page 1, lines 35-37 ). All the witnesses against Petitioner were surprise witnesses though Petitioner did not have the presence of mind to object to them.

5) Magistrate states that there was sufficient evidence presented at the hearing to revoke Petitioner's parole. ( page 14 ) Magistrate is very much mistaken and the record proves it to be so. Nowhere, throughout the revocation hearing, was any evidence presented that he had been enrolled in the internet yet the revocation was based, partly, on having done so. ( Hearing transcript in its entirety ) As for having used a computer, the hearing officer himself admitted that the flimsy evidence against Petitioner was questionable. ( Transcript tape 3 of 3, page 11, lines 29-46 ) This, incidentally, goes against Morrissey , supra , in that "the finding of a parole violation is based on verified facts to support revocation." ( at 2595 )

2

6) Magistrate states that Petitioner agreed to the special conditions prior to his release on mandatory supervision on November 5, 1996. ( page 17 ) Magistrate is, once more, completely mistaken and the record proves it conclusively. ( R-MSJ, exhibit G, page 21 ) Petitioner did not do so. There is no requirement to sign any agreement prior to release on mandatory supervision. Magistrate's confusion is apparently based on Petitioner signing, in February of next year, as acknowledgement and not agreement, a list of conditions.

7) Perhaps Magistrate most preposterous error is in stating that the restrictions were reasonable in order to prevent the Petitioner from engaging in child pornography. ( page 16 ) Here Magistrate has inadvertently revealed the actual motivation for her recommendation to deny habeas corpus. Petitioner has no interest, and no history, and there is no evidence whatsoever of this offence. It is an unproven, unsubstantiated accusation. It does not exist. It is a strawman. It is fallacious that it falls of its own weight. Magistrate states that the possibly, without any evidence or any facts whatsoever, Petitioner's Constitutional rights should be eliminated in the offhand chance that he may, someday, engage in child pornography. But why stop there ? Petitioner might just also engage in embezzling, insider trading, kidnapping, jaywalking, murder, bad checks, assassination, collecting bald eagles, stealing Picassos, pickpocketing, car theft, drug dealing, DWI, insurance fraud, vandalism, tearing off labels from matresses, so it is perfectly justifiable, using this line of reasoning, to eliminate Petitioner's ( and presumably others' ) Constitutional rights.

### III

Petitioner would also show that the <u>Memorandum and Recommendation</u> is based on error in law. Specifically :

1) The two parole conditions easily fit the overbreadth doctrine regarding Constitutional rights :

Releassee shall not subscribe to, operate, use,
communicate on or with, computer or otherwise
electronic internet devices, fax services, and bulletin boards.


Releassee shall not own, maintain or operate
computer equipment without a declared purpose and
the authorization of releassee's supervising officer.

2) In U.S. v. Smith , 618 F. 2D 280, U.S. v. Mills , 959 F 2D 516, Porth v. Templar , 453 F 2D 330 and Springer v. U.S. ,148 F 2D 411, 416, the preposition is put forth that parole bureaucracies cannot impose crippling conditions upon their charges, especially if the intent of parole is to rehabilitate.

3) Magistrate argues that Petitioner's Constitutional rights can be affected by virtue of his being under supervised release. Petitioner argues that the extensive legal record unequivocally affirms that abridgement of said rights must be highly specific and reasonable and not wholesale, across the board, eradication. Procunier v. Martinez , 416 U.S. 396, S. CT. 1800, 40 L. Ed. 2D 224; Hernandez v. Estelle ,788 F. 2D 1154; Wollf v. McDodennell , 418 U.S. 539, 576, 94 S. CT. 2963, 41 L.Ed 2D 935, and many others.

Magistrate states that the decisions cited by Petitioner regarding First Amendment Protection were irrelevant because parolees were not involved. ( page 17 ) She then cites a decision wherein a parolee who was an IRA terrorist was forbidden to join Irish militant clubs ( not all types of organizations ). The present Petitioner is neither Irish nor a terrorist. Specifics notwithstanding, application of principle from one case to another is permissible.

Petitioner's First Amendment protection has been completely negated to the overall use and ownership of fax equipment, computer equipment, and the internet. The prohibitions do not even say why this is so, undoubtedly because if they detailed specifics they would lose the overbroad force. It is not self-evident.

4) In R-MSJ, Magistrate states that the party seeking summary judgement has an initial advantage. "The controverted evidence must be viewed in the light most favorable to the non-movant and all reasonable doubts must be resolved against the moving party. Lujan v. National Wildlife Fed'n ,497 U.S 871, 888, 110 S.CT. 3177, 3188 ( 1990 )." ( page 8 ) Yet, Magistrate completely fails in applying this strict set of standards to Petitioner's own motion for summary judgement. This is particularly important in view of the fact that Respondent did not deign to respond to said motion.

WHEREFORE PREMISES CONSIDERED, Petitioner prays the Court to reopen the hearing so that all relevant matters may be considered.

Armando Simon
TDC# 522486, Garza East Unit
HC 02 BOX 985
Beeville, Tx 78102

4