United States District Court
Southern District of Texas
FILED

SEP 26 2000

Michael N. Milby, Clerk

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### CORPUS CHRISTI DIVISION



ARMANDO SIMON §
§
V. § C.A. NO. C-00-090
§
GARY JOHNSON §

## PETITION FOR CERTIFICATE OF APPEALABILITY

TO THE HONORABLE JUDGE OF SAID COURT :

COMES NOW, ARMANDO SIMON, PETITIONER in the above-styled cause, acting prose, and files this Petition for Certificate of Appealability of the denial of his petition for Writ of Habeas Corpus. Petitioner is uncertain as to the "chain of command" in obtaining a COA and wants to preserve the option of having his petition for COA be considered outside of Texas. Therefore, Petitioner would submit the petition to a circuit judge, if, and only if, it does not preclude said petition to be considered outside of Texas. Otherwise, if submission eliminates the option for presenting the petition for COA outside of Texas, then Petitioner instead requests that this petition be directly forwarded to the judges of the court of appeals.

## I
## THE SHOWING REQUIRED FOR THE ISSUANCE
## OF A CERTIFICATE OF APPEALABILITY

Obtaining a Certificate of Appealability ( COA ) requires a substantial showing of Constitutional error. 28 U.S.C s 2253 (c) (2); Drinkard V. Johnson, 97 F. 3D 751, 756 (5th Cir. 1996). This entails that the questions be (a) Debateable among reasonable jurists, (b) Of a type which would resolve in the Petitioner's favor, or (c) "Adequate to deserve encouragement of further proceedings." Lozada V. Deeds, 498 U.S. 430, 432, 111 S. CT. 860, 862, 112 L. Ed. 2D 956 (1991). The present case contains very substantial Constitutional

1

issues. It was initially found to be so, when the Writ of Habeas Corpus was found not to warrant summary dismissal.

## II
## SYNOPSIS

On July 1, 1999 Petitioner was arrested for having violated two conditions of his supervised release against operating his son's computer when he allegedly utilized it to obtain quotes on the stocks market, and, against being subscribed to the internet when his wife subscribed the Petitioner's son to the internet. Neither stocks, nor the internet, nor computer equipment was ever a factor in the original offence.

A revocation hearing was conducted on July 19 and August 2, 1999. Revocation was ordered on August 16. A petition for Writ of Habeas Corpus was submitted to the original district court on November 1, 1999 and forwarded to the Texas Court of Criminal Appeals of Texas which was denied on December 15, 1999. The Writ was filed on February 28, 2000 in the U.S. District Court. Cross motions for summary judgement were filed by both Respondent ( R-MSJ ) and Petitioner ( P-MSJ ). On July 25, 2000 Magistrate Judge filed Memorandum and Recommendation ( M&R ) recommending denial of the habeas corpus. On August 8, Petitioner filed his objections citing numerous errors of facts employed by Magistrate Judge in reaching the conclusion. On August 11, 2000 District Judge adopted said Memorandum and gave Final Judgement against the habeas corpus. Additional motions and a Notice Of Appeal was filed on August 27. On September 31, District Judge signed Order Denying Certificate of Appealability which was filed on September 1 and received by Petitioner September 6, wherein Petitioner's Motion for Certificate of Appealability was denied before it had been submitted.

## III
## THE QUESTIONS AT ISSUE

1) Are the two restrictions overbroad in scope so that they are tantamount to censorship and Petitioner's First Amendment protection was breached ?

2) Was the Petitioner's Fifth Amendment protection violated when he was coerced by his parole officer to either submit to annual polygraph exams or be sent to prison, and, when

polygraph exams were introduced into evidence at the revocation hearing, though they were irrelevant to the question at hand ?

3) Were the cited facts in Magistrate's M&R ( which was the foundation of Final Judgement ) that were used to support the recommendation mistaken ? In other words, were there errors of fact in the M&R so that the Due Process Clause of The Fourteenth Amendment violated ?

4) Was the Due Process Clause of the Fourteenth Amendment violated at the revocation hearing ?

## IV

Are the two restrictions overbroad in scope so that they are tantamount to censorship and Petitioner's First Amendment Protection was breached ?
The two restrictions are as follows :

> Releassee shall not subscribe to, operate, use ,communicate,
> on or with, computer or otherwise electronic internet devices,
> fax services and bulletin boards.

> Releassee shall not own, maintain or operate computer
> equipment without a declared purpose and the authorization
> of releassee's supervising officer.

It becomes immediately obvious that the restrictions indeed fit the over breadth doctrine in regards to the First Amendment, and as such are legally invalid. <u>City of Houston, Tx V. Hill</u>, 107 S. CT. 2502, 482 U.S. 451, 96 L. Ed. 2D 398; <u>Board of Airport Com'rs of The City of Los Angeles V. Jews for Jesus</u>, 107 S. CT. 2568, 482 U.S. 569, 96 L.Ed. 2D 500. The State's attemp at censorship is blatant and the only surprising aspect of the restrictions is that telephones, telegraphs, CDs, VCRs, magazines, newspapers, telegraphs and televisions are not included. As it stands, Petitioner could just as easily have been revoked for owning a diskette whose sole content would have been Thomas Jefferson's writings.

Whenever the Courts have found it necesary to abridge someone's First Amendment, it has been a surgical procedure and not with a chainsaw. <u>Globe Newspaper Co. v. Superior Court</u>, 102 S.CT. 2613; <u>U.S. Steelworkers of America v. Sladowski</u>, 102 S. CT. 2339;103 199, 459

3

U.S. 899. "First Amendment freedoms may not be infringed absent a compeling governmental interest and even then, any goverment regulation must be carefully tailored so that rights are not needlessly impaired." ( at 2339 ) Precedent is very clear on this point and abundantly so : any restriction on Constitutional rights must be minimal, selective, and rational, and furthermore this principle applies to prisoners and parolees. Thornburgh v. Abbott, 109 S. CT. 1874, 490 U.S. 401, 104 L.ED. 2D 459; Turner v. Safley, 107 S.CT. 2254, 482 U.S. 78, 96 L. ED. 2D 64; Procunier v. Martinez, 416 U.S. 396, 94 S. CT. 1800, 40 L.ED. 2d 224; Wollf v. McDonnell, 418 U.S. 539, 576-577, 94 S.CT. 2963; Garrett v. Estelle, 424 F. Supp. 468; Hernandez v. Estelle, 788 F. 2D 1154; Guajardo v. Estelle, 568 F. Supp. 1354. In some of these decisions the ruling was that although certain, very specific, items in prisoner's mail could be regulated, a prisoner could still receive other mail. The post was not forbidden in toto. Compare that principle with the blanket denial imposed on Petitioner of receiving information, including E-mail, through the computer and the internet. Constitutional rights certainly do not disappear because a person is on parole. Gardner v. Broderick, 392 U.S. 279 88 S.CT. 1916; Beck v. Purkett, 11 F. 3d 15 F. 803; Gagno v. Scarpelli, 411 U.S 778. 93 S.CT. 1975 36 L.Ed. 2d 656; U.S. v. Consuelo-Gonzalez, 521 F. 2d 259; Minnesotta v. Murphy, 104 S. CT. 1136; U.S v. Mills, 959 F. 2d 516.

The idea of censorship of religion, books, facts, art, politics, literature, economics, television ( and stock prices ! ) is so ingrained and abhorrent in our society that most legal questions on censorship nowadays revolve around sexual matters that usually involve a trivialized, nitpicking dispute as to just how much nudity should be permitted. Sable Communication of Calif. v. F.C.C, 109 S.CT. 2829, 492 U.S. 115, 106 L. Ed. 2D 93; City of Erie v. PAP's A.M, 120 S. CT. 1382 ( 2000 ). The ruling in this case as a throwback to two centuries ago. It involves obtaining stock market prices over a computer ! Yet, the prohibition is against receiving any information whatsoever, and, against possession of objects ( diskettes, fax, computer hard drive ) that contain a plethora of information.

Magistrate Cooper-Hill dismisses the decisions cited by Petitioner because they did not directly involve parolees. ( pages 17 ) Apparently, she was incapable of transferring the principle involved from one case to the other. Then, utilizing an intellectual legerdemain, she cites Malone v. U.S, 502 F. 2d 554 wherein an IRA terrorist was proscribed from joining ultranationalist Irish organizations, oblivious to the fact that this a) Petitioner is not Irish b) Petitioner is not a terrorist c) Malone was not proscribed from joining other organization, from the Democratic Party to the Book of The Month Club.

Petitioner's COA should be granted. Lozada v. Deeds, supra.

4

V

Was the Petitioner's Fifth Amendment protection violated when he was coerced by his parole officer to either submit to an annual polygraph exam or be sent to prison, and, when polygraph exams were introduced into evidence at the revocation hearing, though they were irrelevant to the question at hand ?

That coercion indeed took place and that the polygraphs were introduced as evidence will be treated in section VI. One of the two polygraphs had been taken a year prior and was completely irrelevant at the revocation hearing but was inflammatory. See section VI.

Essentially, Petitioner was presented with Hobson's choice. The polygraph examiner was not present at the hearing.

A citizen, even a parolee, may refuse a polygraph. Minnesota v. Murphy, 104 S.CT. 1136; Lefkowitz v. Turley, 414 U.S. 70, 77, 94 S.CT. 316, 322, 38 L.Ed. 2d 274; Garrett v. Broderick, 392 U.S. 279 88 S.CT. 1916.

As to Hobson's choice, overall coercion, and relevant polygraph issues see U.S. v. Kordell, 397 U.S. 1, 7-10, 90 S.CT. 763, 766-769, 25 L.Ed 2d 1; Malloy v. Hogan, 378 U.S. 1, 8, 84 S.CT. 1489, 1493, 12 L. Ed. 2d 653; Lefkowitz v. Cunningham, 431 U.S. 801, 806, 97 S.CT. 2132; Sanitation Men v. Commissioner of Saniatation, 392 U.S. 280, 283-284, 88, S.CT. 1917, 1919-1920, 20 L. Ed. 2d 1089; Schneckloth v. Bustamante, 412 U.S. 218, 93 S.CT. 2041, 36 L. Ed. 2d 854; Bumper v. N. Carolina, 391 U.S. 543, 88 S.CT. 1788, 1792, 20 L.Ed 2d 797. The parole bureaucrats shrugged off Petitioner's invoking Fifth Amendment protection and ordered him to submit, or, be incarcerated/ revoked. A person does not waive his Fifth Amendment priviledge by answering questions through coercion instead of standing firm. Garrity v. New Jersey, 358 U.S 493, 87 S. CT. 616.

And why did Petitioner not challenge in the Courts the annual required polygraph ? Because the parole bureaucrats could have immediately place him in prison wherein he would have had to await the slow, tortuous, labyrinthic turnings of the legal system, apart from his family and suffering financial difficulties, always with the potential risk of encountering another Magistrate Cooper-Hill. If this lack of faith in the legal establishment sounds a bit exaggerated, so does being incarcerated, on the basis of little or no evidence, for looking up stock quotes in a computer. And a Federal district court affirming the action. By time that this habeas corpus is granted over a year and a half will have elapsed.

Petitioner's COA should be granted. Lozada v. Deeds , supra.

# VI

Were the cited facts on Magistrate's M&R ( which was the foundation of Final Judgement), that were used to support the recommendation mistaken ? In other words, were there errors of fact in the M&R, so that the Due Proccess Clause of the Fourteenth Amendment violated ?

You bet. Exactly like the error-filled hearing report used subsequent to the hearing by the parole board to make its decision.

1) Magistrate states that the polygraphs were not entered into evidence. ( page 14 ) The record supports the fact that Magistrate Cooper-Hill is very much mistaken. They were not only discussed during the hearing but the polygraph reports, along with Mr. Keedy's cover letter, were entered into documentary record. ( R-MSJ, exhibit G, pages 31-33; hearing report, page 3 of 9, State's exhibit D ( 3 pages ); revocation hearing transcript, tape 1 of 3, page 5, lines 30-46; page 6, lines 1-31; page 25, lines 8-46; page 26, lines 1-27; page 28, lines 33-45; page 31, lines 40-44; R-MSJ, exhibit G, page 36, page 42 ).

2) Magistrate Cooper-Hill makes the additional mistake in stating that the annual polygraph was not coerced. ( page 14 ) Magistrate Cooper-Hill is mistaken and the record proves it in that Petitioner's parole officer admitted that refusing to submit to the annual polygraph would resort in incarceration. ( Hearing transcript, tape 1 of 3, page 19, lines 24-25, transcript, page 6, lines 40-46; R-MSJ, exhibit G, page 34, page 42 ). This was, essentially, an example of Hobson's choice. Malloy v. Hogan, supra; Garrity v. New Jersey, supra; Lefkowitz v. Cunningham, supra.

3) Magistrate Cooper-Hill states that Petitioner was allowed to call witnesses and submit documentary evidence at the revocation hearing. ( page 12 ) Magistrate Cooper-Hill, is, once again, mistaken and the records proves it in that he was not allowed to do so. ( Transcript tape 2 of 3, page 8, lines 18-40; transcript tape 1 of 3, page 29, lines 1-45 ) This refusal by the State goes against the firm guidelines set forth in Morrissey v. Brewer, 408 U.S. 471, 92 S. CT. 2593.

4) Magistrate Cooper-Hill states that, apart from Petitioner's objection to the introduction of the polygraph results, Petitioner did not object to the State's documentary evidence. ( page 12 ) Magistrate Cooper-Hill is, yet again, mistaken. Petitioner kept being given surprise documentary evidence, contratry to the rules dictating prior discovery, to which he objected. (transcript tape 1 of 3, page 7, lines 29-34; tape 3 of 3, page 1, lines 35-37). All the witnesses against Petitioner were surprise witnesses though Petitioner did not have the presence of mind

6

to object to them, contrary to Morrissey , supra. The lack of objections is immaterial in so far as it is acknowledged that such a hearing is not as legally strict as a regular criminal trial.

5) Magistrate Cooper-Hill states that there was sufficient evidence presented at the hearing to revoke Petitioner's supervised release. ( page 14 ) Magistrate Cooper-Hill is very much mistaken and the record-again-proves it to be so. Nowhere throughout the revocation hearing was the evidence presented-none-that he had been enrolled in the internet, yet the revocation was based, partly, on having done so. ( Hearing transcript in its entirety ) As for having used a computer, the hearing officer himself admitted that the flimsy evidence against Petitioner was questionable. ( Transcript tape 3 of 3, page 11, lines 29-46 ) This incidentally, goes against Morrissey , supra, in that "The finding of parole violation is based on verified facts to support revocation." ( at 2595 )

6) Magistrate Cooper-Hill states that Petitioner agreed to the special conditions prior to his release on mandatory supervision on November 5, 1996. ( page 17 ) Magistrate Cooper-Hill is, yet once more, completely mistaken and the record proves it conclusively. ( R-MSJ, exhibit G, page 21 ) Petitioner did not do so. There is no requirement to sign any agreement prior to his release on mandatory supervision. Magistrate's confusion is apparently based on Petitioner signing, in February of next year, as acknowledgement and not agreement, a list of conditions.

Petitioner's COA should be granted. Lozada v. Deeds , supra.

## VII

Was the Due Process of Fourteenth Amendment violated at the revocation hearing ?

Indeed it was. Morrissey , supra, established firm conditions for valid revocation hearings. Once of these pillars in the right to call witnesses and present evidence. Though present nearby, two of Petitioner's witnesses were arbitrarily not allowed to testify. ( Hearing transcript tape 2 of 3, page 8, lines 18-40; tape 1 of 1, page 5, lines 5-39 ) Evidence was not allowed to be introduced by Petitioner. ( Hearing transcript tape 1 of 3, page 29, lines 1-45 ) This was in spite of hearing officer reaffirming Petitioner's right to have witnesses heard. (Hearing transcript tape 1 of 3, page 3, line 4 ).

Absolutely no evidence whatsoever-none-was presented that showed Petitioner to be subscribed to the internet. None. Yet, he was found guilty of having done so. ( Hearing transcript in its entirety )

7

One of the requirement of <u>Morrissey</u> is a neutral objectivity of the part on the hearing officer. This was not met as evidence by : a) Petitioner was found guilty of having used a computer on the basis of evidence the hearing officer admitted was flimsy. ( Transcript tape 3 of 3, page 11, lines 29-46 ), b) Petitioner was found guilty of being subscribed to the internet without any evidence presented to that effect, c) The hearing report submitted to the parole board was full of errors of facts. d) The hearing report stated that the Petitioner's personality alone was sufficient grounds for incarceration. ( Hearing report page 3 of 6 )

Hearsay evidence alone is not sufficient ground to revoke parole. <u>Mcbride v. Johnson</u>, 118 F. 3d 432; <u>Farrish v. Mississippi Parole Board</u>, 836 F. 2d 969.

Findings are not supported by the evidence. The preponderance of the evidence is for acquittal. The sole evidence consisted in Anthony Ramirez declaring that Petitioner had stated that he operated a computer in order to obtain stock quotes, a statement that Petitioner has consistenly denied. There has been a double standard evident throughout this legal labyrinth in regards to Petitioner's testimony : absolute credibility in the alleged self-incrimination version and complete ignoring in the self-exculpatory version.

Surprise evidence was presented at the hearing in spite of a statement signed by the hearing officer guaranteeing discovery prior to the hearing ( writ of habeas corpus, evidence # 6 ) :

You have the right to disclosure.
That means you can see eveything before the hearing.

Most of the State evidence was surprise. ( Hearing transcript tape 1 of 3, page 7, line 29; tape 2 of 3, page 1, line 35; tape 1 of 3, page 28, lines 38-39; hearing report page 3 of 9- defense exhibits ) Witnesses Elley, Keedy, Ramirez and Anderson were all surprise witnesses: no list of witnesses were presented to Petitioner beforehand. Again, <u>Morrissey</u> is ignored. ( Is it not ironic that the bureaucrats of the parole bureaucracy comport themselves in revocation hearing in an illegal manner ?

The hearing report which was written by the hearing officer and which is used by the parole board to decide on the disposition of the Petitioner had multiple errors. ( writ of habeas corpus addendum, pages 13-14 )

Lastly, and admittedly this is a point cited in both the original state petition and in the writ, though not developed as much as it should have been, case law, including State law, was extensively violated or ignored. One expects laws, even State laws, to be adhered to by the State and not just by a citizen. By not applying cited State law, in a State matter, a citizen

reasonably expects that the laws that benefit him will be as applicable as the ones which are detrimental. This is part of the Due Process principle. Specifically :

a) Dozens of cases reiterate that a polygraph may not be used, or alluded to, in any manner whatsoever in any legal procedure by any party ( writ addendum, pages 6-7 ) This point was even brought up at the revocation hearing, and even written copies of case decisions were handed in when the polygraph was objected to. not that revocation hearings ever heed the law. ( Hearing transcript tape 1 of 3, page 6, lines 13-31, 40-46; R-MSJ, exhibit G, page 36, 42 )

b) Any parole condition is invalid if : (1) It has no relationship to the original crime ( 2 ) Relates to conduct that is not itself criminal  ( 3 ) It forbids or requires conduct that is not reasonably related to future criminality. Lacy v. State, 875 SW 2d 3; Tamez v. State , 534 SW 2d 686, 691; Johnson v. Texas, 672 SW 2d 621. ( writ addendum, page 8 )

## PRAYER

WHEREFORE, Petitioner prays the Court issue a Certificate of Appealability on each of the above questions in this Cause.

Certificate Of Services

A copy of this document was sent to Respondent on September 18, 2000.

Respectfully submitted

Armando Simon
TDC# 522486
Garza East Unit
HC 02 BOX 985
Beeville, Tx 78102

9